IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02682-JLK-KLM

SUZANNE PHILIPPUS, individually, and as the Personal Representative of the Estate of TERRY PHILIPPUS, deceased,

    Plaintiff,

v.

AETNA HEALTH, INC., a Connecticut insurance company, and
TW TELECOM HOLDINGS, INC., a Colorado corporation,

    Defendants.
_____

**ORDER ON RENEWED MOTION FOR PROTECTIVE ORDER**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L.  MIX**

This matter is before the Court on a **Renewed Motion for Protective Order** [Docket No. 70; Filed July 8, 2008] (the "Motion") filed by Defendant TW Telecom Holdings, Inc. ("TW").  Plaintiff filed an Amended Response in opposition to the Motion on July 13, 2009 [Docket No. 72] and Defendant filed a Reply in support of the Motion on July 17, 2009 [Docket No. 79].   The Motion requests that the Court limit the scope of Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition of Defendant TW to areas relevant to Plaintiff's estoppel claim against TW.

I.  Background

This case involves health insurance plan benefits provided to employees of TW. According to the complaint, TW's health plan is insured through a policy issued by Defendant Aetna Health, Inc. ("Aetna"). *Complaint* [#1] at 5.  Plaintiff began employment

1

with TW in 1998. *Id.* at ¶ 13. Her husband, Terry Philippus, was a beneficiary of the plan and received medical treatment for his cancer condition. *Id.* His claims were covered by Aetna. *Id.*

In January, 2006, Plaintiff was informed that she would be laid off from her employment with TW. *Id.* at ¶ 14. Plaintiff was allegedly offered a severance package from TW which included the right to a continuation of insurance under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). *Id.* COBRA provides continued health care benefits for a minimum of eighteen months after termination from employment. *Id.* Plaintiff allegedly contacted Stephanie Wilson, a Human Resources representative with TW, and asked whether the health benefits under COBRA extended to her husband. *Id.* at 15. She asserts that she was advised by Ms. Wilson that her benefits would continue with Aetna as her primary insurer. *Id.* Plaintiff claims that TW's health insurance plan provided that COBRA could be terminated if the beneficiary were *covered* under Medicare. *Id.* at ¶16. Plaintiff elected to continue coverage with Aetna with the understanding that she could do so even though her husband was *eligible* for Medicare. *Id.*

Plaintiff alleges that beginning in February 2006, she continued to pay premiums and receive coverage by Aetna for her husband's medical expenses. *Id.* at ¶¶ 17, 18. According to Plaintiff, beginning in October 2006, Aetna denied her husband's medical care claims on the ground they were not covered by insurance and because Aetna claimed it was not the primary insurer of Mr. Philippus. *Id.* at ¶ 19. Plaintiff asserts she again received assurances from Aetna that it was the primary insurer, but Aetna continued to deny claims made on behalf of Mr. Philippus. *Id.* at ¶ 22. Aetna allegedly informed Plaintiff that it was a secondary insurer because Plaintiff's husband had become eligible for Medicare on

March 3, 2006. *Id.* at ¶ 25.

Plaintiff brings one claim for relief against TW, based on promissory and equitable estoppel. *Complaint* [#1] at ¶¶ 49-52. Plaintiff alleges that in persuading her to accept the severance package, TW represented that her family's health benefits would continue under COBRA as they had in the past, including payment of Mr. Philippus's medical expenses. *Id.* at ¶¶ 50, 52. Plaintiff also asserts that TW provided her with a document stating that Aetna would continue to be Plaintiff's primary insurer. *Id.* at ¶ 51.

## II. Analysis

Plaintiff issued an Amended Notice of Deposition ("Notice") to Defendant TW on July 7, 2009. *Motion* [#79] Ex. E.[1] The Notice lists twenty-five areas of inquiry. *Id.* Defendant TW seeks a protective order limiting the scope of the deposition. It is Defendant TW's position that discovery in this matter pertaining to the estoppel claim should be limited to "any conversations with Ms. Wilson and the insurance plan information provided by TW," *Motion* [#79] ¶ 5, and that the Notice of Deposition requests "discovery on numerous topics not remotely relevant" to Plaintiff's estoppel claim. *Id.* ¶ 11. Defendant objects to all but six of the topic areas in the Notice. *Id.* ¶ 13.

Plaintiff asserts that discovery related to the challenged topic areas should be allowed under the liberal federal discovery rules. *Response* [#72] at 5. She also claims that the information is discoverable as related to the estoppel claim under two theories: (1) TW waived its right to deny insurance coverage because it knew of her husband's eligibility

---

[1] On June 3, 2009, the District Court Judge entered a protective order on the original Notice of Deposition [# 64], but vacated that order on July 13, 2009 [# 73]. The Motion was filed in the interim.

under Medicare and yet still accepted his monthly premiums; and (2) Plaintiff relied on TW's interpretation of an ambiguous provision of the health plan.  *Id.* at 5, 9.

Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  *See also Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense). Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every man's evidence,'" the Federal Rules broadly define the scope of discovery.  *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  The Court may, however, forbid certain disclosures or discovery, specify terms for certain disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosures or discovery to certain matters to protect a party from undue burden and expense.  *See* Fed. R. Civ. 26(c)(1).

Pursuant to Fed. R. Civ. P. 26(b)(1), any discovery sought must be relevant. Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  *See, e.g., Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh

the ordinary presumption in favor of broad disclosure." *Simpson*, 220 F.R.D. at 350 (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome"). Further, the objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Id.* (citation omitted). However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC,* 2008 WL 678700, at *2 (D. Kan. 2008) (unpublished decision) (citation omitted).

Plaintiff has brought a single claim against TW, based on promissory and equitable estoppel. Plaintiff's claims are based on alleged statements made to her by a representative of TW and a document provided to her by TW regarding insurance coverage from Aetna. To state an equitable estoppel claim, a party must establish four elements: "'(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.'" *Rios v. Ziglar*, 398 F.3d 1201, 1208 (10th Cir. 2005) (quoting *Konwalczyk v. INS*, 245 F.3d 1143, 1149 (10th Cir. 2001)). The elements of a promissory estoppel claim are (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by

the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Marquardt v. Perry*, 200 P. 3d 1126, 1129 (Colo. App. 2008).

Earlier in the proceedings of this case, Defendant TW moved to dismiss the estoppel claim on the ground that it was preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. Motion* [#13]. The District Court Judge denied the motion and found that "Plaintiff's allegations are sufficient to allow her to attempt to develop the factual prerequisites necessary to her equitable claims for relief and to avoid" ERISA preemption. *Minute Order* [#36].  Despite this ruling, it appears that the Tenth Circuit has held that a common law estoppel claim is not available under ERISA. *See Miller v. Coastal Corp.* 978 F.2d 622, 624-25 (10th Cir. 1992).  However, it is not for me to approve or disprove Plaintiff's theories of liability at this stage of the proceedings.  Discovery should not be prohibited merely because it relates to claims that the defense asserts are based on an insufficient theory. *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000); 8 Wright, etc § 2008 at 104 & n. 14.  The purpose of discovery is often to better define the legal and factual issues involved in a case, which is one of the reasons for granting broader production. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  However, as ordered by the District Judge, Plaintiff is only entitled to discovery on areas of inquiry that are relevant to the elements of her estoppel claim.

Plaintiff asserts that she should be allowed the extensive discovery requested in the Notice under a "waiver theory," i.e. that TW waived its rights to decline coverage under the health plan because it knew of her husband's eligibility under Medicare, but still accepted Plaintiff's monthly premiums.  Plaintiff's position is flawed for a number of reasons. First,

Plaintiff has made no allegations in the complaint regarding waiver. In addition, Plaintiff's allegations in her Response to the Motion do not set forth facts to support a waiver theory. Plaintiff is correct that under Colorado law "an insurer may waive its right to void or cancel a policy by accepting premiums from the insured after it learned of the alleged grounds for cancellation of the policy." *Struble v. American Family Ins. Co.*, 172 P.3d 950, 956 (Colo. App. 2007). However, TW is not the insurer in this case; Aetna is. Plaintiff acknowledges this fact because in her complaint she states that she paid the premiums to Aetna. *Complaint* [#1] at ¶¶ 17, 18. Nowhere in the complaint is it alleged that TW is her insurer. Therefore, any requests for discovery based on a waiver theory are not relevant to Plaintiff's estoppel claim against TW. Plaintiff cannot inquire in the Rule 30(b)(6) deposition about the following topic areas in the Notice: 7, 18, 19, 20, 21, 23, 24, and 25.[2]

Plaintiff also justifies other areas of inquiry listed in her Notice based on her contention that one or more of TW's benefits plan provisions are ambiguous, and that an employee of TW interpreted ambiguous provisions of the plan and imparted that information to Plaintiff upon which she relied to her detriment. *Response* [#72] at 9. Defendant TW contends that at a telephone hearing granting TW's previous motion for protective order, District Court Judge Kane held that Plaintiff is not entitled to inquire into TW's interpretation of the plan. *Motion* [#70] at 3. Defendant has not produced any evidence in support of this contention. I have found no documentation of this alleged ruling in the record of this case. Moreover, as noted above, Judge Kane subsequently vacated the order made in that telephone hearing. Therefore, Plaintiff is entitled to relevant evidence to support this aspect

---

[2] TW states that it will provide a representative to testify at the deposition regarding topics 1, 2, 3, in part, 4, 5, 12, in part, and 14. *Motion* [#70] at 4.

of her claim. Examples of relevant evidence may include information about the promises made by TW's human resources personnel to Plaintiff, interpretations of the health benefit plan terms by TW and its employees, TW's interactions with Aetna and its employees about the meaning of the plan terms, and documents provided by TW to employees about Aetna's coverage. As such, Plaintiff will be permitted to inquire in the deposition about topics 3, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17, and 22.[3]

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion is **GRANTED in part and DENIED in part**.

IT IS FURTHER **ORDERED** that at the Fed. R. Civ. P. 30(b)(6) deposition of Defendant TW, Plaintiff shall be permitted to inquire about the following topics only, as identified in the Amended Notice of Deposition [#70-6]: 1, 2, 3, 4, 5, 6, 8, 9, 10, 11 12, 13, 14, 15, 16, 17, and 22.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and fees incurred in litigating the Motion.

**The parties are advised that no future opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(A). If the parties are unable to reach agreement on a discovery issue after conferring, they shall arrange a conference call with Magistrate Judge Mix to attempt to resolve the issue. Both of these steps must be completed before any contested discovery**

---

[3] TW requests limitations on topics 3 and 12, but I find that the information requested by Plaintiff is relevant to the estoppel claim.

**motions are filed with the Court.**

                                                    BY THE COURT:

                                                   __s/ Kristen L. Mix_____
                                                   Kristen L. Mix
                                                   United States Magistrate Judge

DATED: August 27, 2009