IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02682-JLK-KLM

SUZANNE PHILIPPUS, individually, and as the Personal Representative of the Estate of TERRY PHILIPPUS, deceased,

    Plaintiff,

v.

AETNA LIFE INSURANCE CO., a Connecticut insurance company, and
TW TELECOM HOLDINGS, INC., a Colorado corporation,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on a **Motion for Judgment on the Administrative Record** filed by Defendant Aetna Life Insurance Co. ("Aetna") [Docket No. 93; Filed October 28, 2009] (the "Admin Record Motion"), Aetna's **Motion for Summary Judgment** [Docket No. 94; Filed October 28, 2009] ("Aetna's Motion"), and **Defendant TW Telecom Holdings, Inc.** ("TW") **'s Motion for Summary Judgment** [Docket No. 95; Filed October 28, 2009] ("TW's Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motions have been referred to this Court for a recommendation. The Court has reviewed the Motions, Plaintiff's responses to the Motions [Docket No. 104, 105, 106], Defendants' replies in support of their Motions [Docket No. 112, 113, 114], the entire file, relevant legal authority, and is advised in the premises. For the reasons stated below, I RECOMMEND that Defendants' Motions be **GRANTED**.

1

## I. Background[1]

This case involves health insurance plan benefits (the "Plan") provided to employees of Defendant TW Telecom Holdings, Inc. ("TW"). AETNA 01337.[2] Plaintiff was employed by TW. *Id.* Her husband, Terry Philippus, was a beneficiary of the Plan. AETNA 00026. TW is the Plan's administrator and sponsor. AETNA 00037. TW and Aetna entered into an Administrative Services agreement, which provides that Aetna will provide claim administrative services for the Plan. AETNA 00001. Pursuant to the agreement, Aetna has "discretionary authority to determine entitlement to Plan benefits as determined by the Plan Documents for each claim received and to construe the terms of the Plan . . . ." AETNA 00009.

The Plan states that any Medicare benefits shall be taken into account in determining Plan benefits, even if a beneficiary elects not to receive Medicare benefits. AETNA 00077-00078. The Plan also provides that the "[e]mployer's compliance with federal law requires this Plan's benefits for a person to be figured before benefits are figured under Medicare." AETNA 00078. In order to comply with federal law, specifically the Medicare Secondary Payer Act (MSPA), the Medicare provisions of the Plan did not apply to Plaintiff during her employment with TW. *See* 29 U.S.C. § 1395y (Medicare cannot be primary insurer where employee health plan is in effect). Thus, pursuant to the statute, Aetna remained Plaintiff's primary insurer while she was employed by TW.

---

[1] These facts are applicable to the ERISA claims against Aetna and the estoppel claims against Aetna and TW.

[2] The Administrative Record consists of two volumes of bates stamped documents. References to the Record are by bates number.

On January 19, 2006, Plaintiff was informed that she would be laid off from her employment with TW. AETNA 01337. On February 26, 2006, Plaintiff entered into a separation agreement with TW, which included the right to continuation of insurance under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). AETNA 01337- 01343. COBRA provides continued health care benefits for a specified time period after termination from employment. *See* 29 U.S.C. §§ 1161-1168. The agreement between TW and Plaintiff regarding coverage under COBRA states that the parties are subject to the terms of the Plan. AETNA 01337. Plaintiff contacted a TW Human Resources representative, who advised Plaintiff that the COBRA benefits were the same as the benefits she received while employed with TW. AETNA 01233.

Plaintiff alleges that beginning in February 2006, she continued to pay premiums and receive coverage by Aetna for her husband's medical expenses. *Id.* at ¶¶ 17, 18.[3] On September 26, 2006, Plaintiff and Aetna had a telephone conversation about her benefits. A summary of that conversation in the Administrative Record indicates that the company discovered for the first time on that date that Plaintiff was no longer employed by TW and that her husband was eligible for Medicare. *Id.* Plaintiff was also advised that Aetna would take into account her husband's Medicare benefits, whether or not her husband was enrolled in the program. *Id.* Furthermore, Plaintiff was advised that even though her husband was only enrolled in Medicare Part A, Aetna would estimate and apply

---

[3] The Court notes that Plaintiff's statements are not part of the Administrative Record and generally should not be considered. *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1011 (10th Cir. 2000) (quoting *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004)).

benefits available under Part B because her husband was eligible for Part B.  *Id.*[4]

Plaintiff argues that these facts do not accurately reflect the content of her conversation with Aetna on September 26, 2006.  *Opposition* # 106 at 4.  The evidence presented by Plaintiff consists of an affidavit by Plaintiff and a summary of the conversation by Aetna that appears in the Administrative Record.  *Response* # 104 at 2-3.  As discussed in more detail below, Plaintiff's evidence does not refute the material facts of Aetna's version of the telephone conversation.

Beginning in October 2006, Aetna denied Plaintiff's husband's medical care claims on the ground that they were not covered by the Plan and because Aetna was not Mr. Philippus's primary insurer.  *Complaint* [#1] at ¶ 19.  On October 24, 2006, Plaintiff's counsel called Aetna and a representative erroneously informed counsel that Mr. Philippus was not eligible for Medicare and, thus, Aetna was his primary insurer.  AETNA 01192, 01200.  Plaintiff also received a letter stating that the Plan was his primary insurer. AETNA 00176.  Aetna claims that this letter was sent in error and that the totality of the facts and circumstances were not in its possession at the time.  *Aetna's Motion* #94, Ex. B at 104 ll. 13-22; 115, ll 24-25.

After determining that Mr. Philippus was eligible for Medicare, Aetna reinstated Medicare as the primary payer for his claims.  AETNA 01193 & 00253.  Aetna informed Plaintiff that the Plan would make payment only when the payment under the Plan was greater than the Medicare payment. AETNA 00160.  Aetna also stated that the Plan

---

[4] Medicare Part A provides insurance for inpatient treatment and related services.  Part B applies to doctor visits and other outpatient treatment.  *Pinter v. Shalala*, 97 F.3d 1351, 1353 (10th Cir. 1996).

reduced Plaintiff's covered expenses by Medicare benefits for which her husband was eligible, whether or not he was actually enrolled in Medicare. AETNA 00164.

On February 6, 2007, Plaintiff appealed the denial of benefits and the decision that Medicare was her husband's primary insurer under the Plan. AETNA 00122. On March 12, 2007, Aetna affirmed its decision in a letter sent to Plaintiff. The letter stated:

> When the insurance plan is a [COBRA] Policy and a member is on disability, Medicare is the primary insurance. Terry [Philippus] became eligible for Medicare as of 03/01/2006. You have the option not to enroll in Medicare B if you choose to do so.
>
> The current plan that you are on is set up to assume Medicare B, which means if you elect not to enroll in Medicare B, when the claims are processed Aetna will assume Medicare B. Per the phone call on 09/26/2006 Aetna was informed by you [that] Terry elected not to enroll in Medicare B. A review of the claims is being completed, any claims that Aetna did not [a]ssume Medicare B will be corrected.

AETNA 00129.

Following this decision, Plaintiff brought this action, asserting three claims for relief against Aetna for alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. Complaint* [#1] at ¶¶ 30-48: (1) Aetna's decision to deny benefits was arbitrary and capricious, in violation of 29 U.S.C. § 1132(a)(1)(B); (2) Aetna violated its fiduciary duty pursuant to 29 U.S.C. § 1104(a); and (3) Aetna refused to supply requested documents, in violation of 29 U.S.C. § 1132(c). Plaintiff also brings a claim against Aetna and TW based on promissory and equitable estoppel. *Id.* at ¶¶ 49-55. Plaintiff alleges that in persuading her to accept the severance package, TW represented that her family's health benefits would continue under COBRA as they had in the past, including payment of Mr. Philippus's medical expenses. *Id.* at ¶¶ 50, 52. Plaintiff also asserts that TW provided her with a document stating that Aetna would continue to be her

husband's primary insurer. *Id.* at ¶ 51. Plaintiff alleges that Aetna informed her that it was her husband's primary insurer, made payments for her husband's medical expenses, and then began denying claims on the ground that it was the secondary insurer. *Id.* at ¶ 56.

## II. Standard of Review

A. Summary Judgment

The purpose of a summary judgment motion is to assess whether trial is necessary. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit pursuant to the governing substantive law. *Id.*

The movant must show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.

After the movant has met his initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The

6

nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Summary judgment is appropriate in an ERISA case if the administrative record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Adamson v. Unum Life Ins. Co. of Am.,* 455 F.3d 1209, 1212 (10th Cir. 2006).

B.     ERISA Claims

ERISA allows a plan participant, beneficiary, or fiduciary to bring a civil action to enjoin an act or practice which violates the statute, or to obtain other equitable relief to enjoin violation or to enforce a plan's provision. *Milsap v. McDonnell Douglas Corp.*, 368 F.3d 146, 1250 (10th Cir. 2004) (citing 29 U.S.C. § 1132(a)(3)).

> Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44 (1987).

As noted above, Plaintiff has brought three separate ERISA claims against Aetna: (1) wrongful denial of benefits; (2) breach of fiduciary duty; and (3) refusal to supply requested documents.

7

## III. Analysis

A. Denial of Benefits

An administrator's decision to deny benefits pursuant to ERISA is to be reviewed under a *de novo* standard unless the administrator has "discretionary authority to determine eligibility for benefits or to construe the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The administrator has such authority in this case pursuant to an agreement between Aetna and TW. AETNA 00009. Therefore, the Court review's Aetna's decision to deny benefits under an arbitrary and capricious standard. *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1361 (10th Cir. 2009). Pursuant to this standard, the administrator's decision need only be reasonable and in good faith. *Kellogg v. Metro. Life Ins. Co. of Am.*, 549 F.3d 818, 825-26 (10th Cir. 2008). In addition, the Court examines whether the decision is supported by substantial evidence. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support" the administrator's decision. *Caldwell v. Life Ins. Co. of N. Am.* 287 F.3d 1276, 1282 (10th Cir. 2002). Substantial evidence is less than a preponderance, but more than a scintilla. *Adamson*, 455 F.3d at 1212.

Plaintiff is challenging Aetna's decision regarding the effect of Medicare benefits on her COBRA insurance. Aetna determined that "[w]hen the insurance plan is a [COBRA] policy and a [Plan] member is on disability, Medicare is the primary insurance." AETNA 00129. This decision is based on relevant terms of the Plan:

> The total amount of "regular benefits" under all Health Expenses Benefits will be figured. (This will be the amount that would be payable if there were no Medicare benefits). If this is more than the amount Medicare provides for the expenses

8

> allowed, this Plan will pay the difference. Otherwise, this Plan will pay no benefits.
>
> Medicare benefits will be taken into account for any person while he or she is eligible for Medicare. This will be done whether or not he or she is entitled to Medicare benefits.

AETNA 00077.

Plaintiff asserts that Aetna's decision was not "reasonable and in good faith." Plaintiff further asserts that the Plan is silent and ambiguous on the effect of Medicare eligibility on her COBRA policy. She also alleges that Aetna's benefits decision was baseless because Aetna inconsistently interpreted the interaction between the Plan and Medicare. For more than a six month period, Aetna was the primary payer and paid benefits for Plaintiff's husband's medical expenses even though she had been laid off from her employment with TW. Aetna does not dispute this point.

Aetna contends that its benefits decision was based on the plain language of the Plan. The Plan provides that Aetna could not consider Mr. Philippus' Medicare benefits when federal law prohibited it from doing so. AETNA at 00078. The statute at issue, the MSPA, provides that "[a] group health plan ... may not take into account that an individual (or the individual's spouse) who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to [Medicare] benefits . . . ." 42 U.S.C. § 1395y(b)(1)(A)(i)(1). "Current employment status" means that "the individual is an employee, is the employer, or is associated with the employer in a business relationship." 42 U.S.C. § 1395y(b)(1)(E)(ii). By its own terms, the statute does not apply to former employees. *Santana v. Deluxe Corp.*, 12 F.Supp. 2d 162, 170 (D. Mass. 1998). Therefore, once Plaintiff's employment with TW ended, Aetna was permitted to enforce the Plan's

9

provisions that take into account Medicare benefits in evaluating a claim.

After Plaintiff's employment at TW had ended, she entered into an agreement to continue coverage under the Plan in accordance with COBRA and the Plan. AETNA 01337. Plaintiff was thus covered by the Plan while covered by COBRA. The Plan states that "Medicare benefits will be taken into account for any person while he or she is eligible for Medicare. This will be done whether or not he or she is entitled to Medicare Benefits." AETNA 00077. Although this language is not a paradigm of clarity, the only logical reading of it is that Aetna will deduct potential Medicare benefits from a Plan participant's entitlement to Plan benefits. That is what Aetna did here. Thus, Aetna's decision was a reasonable application of the Plan's provision.

Plaintiff also asserts that the "unreasonableness of Aetna's actions in this case is based upon the inconsistent manner in which Aetna processed [her] claims." *Response* # 106 at 5. Aetna concedes that it initially paid benefits on the mistaken belief that Mr. Philippus was not eligible for Medicare benefits. Aetna also asserts that it was not aware that Plaintiff was no longer employed with TW until eight months after the fact and thus it erroneously continued to pay her husband's benefits.

Aetna's erroneous decisions on Plaintiff's claims for payment of her husband's medical expenses after her employment had ended were not based on the Plan's provisions, but instead relied on a misunderstanding of the facts. The Plan provides that "[i]n the event of a misstatement of any fact affecting your coverage under this Plan, the true facts will be used to determine the coverage in force." AETNA 00082. Once Aetna learned that Plaintiff was not employed by TW, the claims for her husband's benefits were

10

denied by Aetna.  Likewise, Aetna's misapprehension that Mr. Philippus was not eligible for Medicare benefits was corrected by Aetna.  Plaintiff is not entitled to capitalize on her insurer's mistake. *See Kaferly v. US West Technologies,* No. 98-1165, 1999 WL 679682, at *10 (10th Cir. Sept. 1, 1999).  She is bound by the Plan's provisions.[5]

    B.    Breach of Fiduciary Duty

As noted above, a participant or fiduciary may bring a civil action to recover benefits due her under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).  In addition, a participant, beneficiary, or fiduciary may bring an action: "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. 1132(a)(3).  A fiduciary must discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and for the purpose of providing benefits to participants and their beneficiaries.  29 U.S.C. § 1104(a).

Plaintiff asserts that Aetna had a fiduciary duty to process claims in a reasonable and consistent manner.  Plaintiff further asserts that Aetna violated its duty by acting in its self-interest and the interests of TW by refusing to consider evidence indicating that the denials of Plaintiff's claims were in error.  Defendants assert that Plaintiff cannot bring this claim because she also seeks relief under the denial of benefits provision of ERISA.

Although 29 U.S.C. §1132(a)(3) authorizes a plan beneficiary to bring suit for equitable relief for an administrator's breach of fiduciary duty, *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996), it is a " 'catchall' provision[ ] act[ing] as a safety net, offering

---

[5] The Court also addresses these circumstances in regard to the estoppel claim below.

11

appropriate equitable relief for injuries caused by violations that [29 U.S.C. 1132(a) ] does not elsewhere adequately remedy." *Id.* Therefore, "consideration of a claim under 29 U.S.C. 1132(a)(3) is improper when the [plaintiff] . . . states a cognizable claim under 29 U.S.C. 1132(a)(1)(B)." *Lefler v. United Healthcare of Utah, Inc.*, 72 Fed. Appx. 818, 826 (10th Cir.2003).

In the circumstances present here, the denial of benefits provision provides adequate relief for Plaintiff's alleged injury, i.e. denial of coverage for her husband's medical expenses. *Lauraceae v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002); *Tollon v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). Therefore, Plaintiff cannot bring a claim for a breach of fiduciary duty under § 1132 (a)(3). *Lefler*, 72 Fed. Appx. at 826; *see also Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir.2006)(noting that1132(a)(1)(B) may not proceed with a claim under 1132(a)(3)"); *Antolik v. Saks, Inc.,* 463 F.3d 796, 803 (8th Cir . 2006)("Where a plaintiff is provided adequate relief by the right to bring a claim for benefits under . . . 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under 1132(a)(3)(B)."); *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir.1998)("Because 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to 1132(a)(3)."); *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1475 (9th Cir.1997)("Equitable relief under section 1132(a)(3) is not 'appropriate' because section 1132(a)(1) provides an adequate remedy in this case.").

Because the Complaint asserts a claim under 29 U.S.C. § 1132(c)(1)(B), Plaintiff is precluded from bringing an action pursuant to 29 U.S.C. § 1132(a)(3). Therefore, the breach of fiduciary claim should be dismissed.[6]

C. Information Request

Plaintiff asserts that the Court should impose a penalty against Aetna pursuant to 29 U.S.C. § 1132(c)(1)(B), which provides for a sanction against a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested . . . within 30 days after such request." Plaintiff sent three letters to Aetna requesting that she be provided with the bases for the denial of payment for her husband's medical expenses and documents supporting these decisions. AETNA 00124, 00158-00159.[7] The term "administrator" means "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

Aetna asserts that this claim should be dismissed because Aetna is not the Plan

---

[6] Plaintiff states that she only made this claim in case the Court ruled adversely on the denial of benefits claim. Despite the Court's adverse ruling on the Plaintiff's denial of benefits claim, because that provision of the statute theoretically provides adequate relief for Plaintiff's injury, she is not entitled to assert a claim for breach of fiduciary duty.

[7] Plaintiff also claims that she requested Internal Revenue Service documents regarding the Plan, but this does not appear in the Administrative Record.

13

Administrator subject to this provision of ERISA. The Plan designates TW as the Plan Administrator and Aetna as the claims administrator. AETNA 00037. Only a plan administrator may be held liable under § 1132(c)(1)(B). *Wilcott v. Matlock, Inc. Employee Benefits Trust*, 64 F.3d 1458, 1462 (10th Cir. 1995); *McKinsey v. Sentry Ins.,* 986 F.2d 401, 404 (10th Cir. 1993).

Plaintiff claims that Aetna was the *de facto* administrator because the company managed all aspects of the claims review process and made the decision in her case. Plaintiff is correct that the Tenth Circuit has stated that "[u]nder appropriate circumstances, . . . [a penalty] may be based on information requests . . . not directed to the plan administrator." *Wilcott*, 64 F.3d at 1461. However, those cases involve requests that were intended to be addressed by the Plan administrator but were referred to another person within the company by mistake. *Id; see Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1111 (10th Cir. 1994) (letter sent to counsel who handled plan); *McKinsey*, 986 F.2d at 404-05 (where personnel regularly answer requests from participants, their actions can be imputed to the plan administrator). That is not the situation here. The Plan explicitly states that Aetna is not the administrator. Plaintiff cannot escape that provision.

### D. Promissory and Equitable Estoppel

Plaintiff has brought a single claim against TW based on promissory and equitable estoppel. Plaintiff's claim is based on alleged statements made to her by representatives of TW and a document provided to her by TW regarding insurance coverage from Aetna. Plaintiff brings the same claim against Aetna.

To state an equitable estoppel claim, a party must establish four elements: "'(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his

conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.'" *Rios v. Ziglar*, 398 F.3d 1201, 1208 (10th Cir. 2005) (quoting *Konwalczyk v. INS*, 245 F.3d 1143, 1149 (10th Cir. 2001)). The elements of a promissory estoppel claim are (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Marquardt v. Perry*, 200 P. 3d 1126, 1129 (Colo. App. 2008).

Plaintiff brings the estoppel claims against Defendants primarily based on alleged representations made by their employees. Plaintiff claims that Aetna began paying her husband's medical expenses, then changed its mind and indicated to her that Medicare was her primary insurer. AETNA 00174-000176; 00160-61. In an affidavit submitted in response to TW's present motion, Plaintiff asserts that she was informed by Ms. Wilson, a TW employee, that her insurance coverage would continue under COBRA as it had while she was employed with TW. *Response* # 105, Ex. 2. TW has presented evidence that this affidavit directly contradicts Plaintiff's deposition testimony where she admitted that she did not, in fact, have a conversation with Ms. Wilson about the primary insurer issue and the effect of Medicare on her COBRA plan. *Reply* # 114, Ex. A-3, at 47:20-48:2, 81:6 – 82:25.

The Court agrees with TW that the alleged new evidence presented by Plaintiff is a "sham affidavit." A party cannot create a genuine issue of fact by offering an affidavit that

disputes facts which are clearly established by other reliable evidence in the record. *Franks v. Nimmo*, 796 F.2d 1230, 1237(10th Cir. 1986). Here, Plaintiff's own deposition testimony is in conflict with the later affidavit. Therefore, the Court will not consider the affidavit as evidence.

As a general matter, ERISA preempts state laws relating to nearly all private employee benefits plans. *Jewel v. Life Ins. Co. of North America*, 508 F.3d 1303, 1308 (10th Cir. 2007). State law estoppel claims are preempted by ERISA. *Kaferly*, 1999 WL 679682, at *9; *Miller v. Coastal Corp.* 978 F.2d 622, 624-25 (10th Cir. 1992).[8] The Tenth Circuit has not expressly recognized an equitable estoppel claim in the ERISA context. *See Callery v. U.S. Life Ins. Co. in City of N.Y.,* 392 F.3d 401, 407 (10th Cir.2004) ( "Although other circuits have recognized equitable estoppel in limited circumstances in the context of ERISA, the Tenth Circuit has not done so." )(citing *Miller,* 978 F.2d at 625); *Cannon v. Group Health Serv. of Okla., Inc.,* 77 F.3d 1270, 1277 (10th Cir.1996) ("[The Tenth Circuit] has neither adopted nor rejected an equitable estoppel rule in the ERISA context."). Generally, "ERISA's express requirement that the written terms of a benefit plan shall govern forecloses" a promissory estoppel claim. *Averhart v. U.S. WEST Mgmt. Pension Plan,* 46 F.3d 1480, 1485 (10th Cir.1994).

The Tenth Circuit, however, has noted that estoppel may apply in a narrow set of circumstances. First, an estoppel claim may be viable "where 'the terms of the plan are

---

[8] Earlier in the proceedings of this case, TW moved to dismiss the estoppel claim on the ground that it was preempted by ERISA. *Motion* [#13]. Senior District Judge John L. Kane summarily denied the motion and found that "Plaintiff's allegations are sufficient to allow her to attempt to develop the factual prerequisites necessary to her equitable claims for relief and to avoid" ERISA preemption. *Minute Order* [#36]. However, nothing in the Order suggests that Judge Kane was making a determination on the merits of an estoppel claim.

16

ambiguous' and 'the employer ['s] communications constituted an interpretation of that ambiguity.' " *Id.* at 1485-86 (noting that other courts have recognized estoppel claims under these circumstances but failing to reach the issue). An estoppel claim can also be brought in "limited, extraordinary circumstances" such as in "egregious" cases when there are "lies, fraud, or an intent to deceive." *Miller*, 978 F.2d at 625; *Callery,* 392 F.3d at 407.

The actions by Aetna and TW representatives alleged by Plaintiff do not rise to this level. Plaintiff alleges that Defendants provided false information regarding the effect of Medicare on her COBRA coverage. Plaintiff asserts that TW falsely represented that her insurance coverage would remain the same while she was on the COBRA plan. She also asserts that she received benefits for medical expenses for eight months before Aetna ceased payments because Plaintiff was no longer employed by TW.

It is apparent from the record that any mistake was inadvertent and not the result of an intent to deceive. Moreover, I find that the terms of the Plan are not ambiguous. Plaintiff's estoppel claims are preempted by ERISA and cannot be pursued here.[9]

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Admin Record Motion [#93] be **GRANTED**.

---

[9] Plaintiff also asserts that ERISA preemption does not apply to a federal common law claim of estoppel. Plaintiff is correct that some circuit courts have recognized a federal common law of estoppel in the ERISA context. *See, e.g.*, *Chapman v. ChoiceCare Long Island Term Disability*, 218 F.3d 506, 510 (2d Cir. 2002); *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 650 (7th Cir. 1993). Other circuit courts have ruled to the contrary. *See*, *e.g. White v. Provident Life & Accident Ins. Co.,* 114 F.3d 26, 29 (4th Cir. 1997) (holding that federal common law under ERISA does not incorporate the principle of estoppel). The Tenth Circuit has not recognized a federal common law estoppel claim in ERISA cases. *See Miller*, 978 F.2d at 625. The Court declines to do so here.

IT IS FURTHER **RECOMMENDED** that Aetna's Motion [# 94] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that TW's Motion [# 95] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that judgment be entered in favor of Defendants and against the Plaintiff.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 10, 2010

                                                                            s/ Kristen L. Mix
                                                                            Kristen L. Mix
                                                                            United States Magistrate Judge